# Estate of William W. Lackey, deceased.   Walter Lackey's Appeal.

*Decedents' estates—Claims for services—Conditional gift—Implied contract—Family relation.*

A niece accepted a devise of a house from her aunt conditioned upon her providing an uncle, who had previously lived with her aunt, a home in the house as long as he lived.   The niece had lived with her aunt and knew the age and the infirmities of her uncle.   The uncle lived in the house until his death, and paid his niece the sum of $5.00 per week for his board.   There was no evidence to show that there was any considerable change in the uncle's condition after the aunt's death.   After the uncle's death the niece claimed from his estate an additional $10.00 per week for services rendered to the decedent for two years and a half prior to his death.   *Held*, (1) That as the niece had accepted the devise of the house upon the condition prescribed by her aunt's will, a family relation was thereby created between the niece and the uncle and she was therefore bound to show an express contract in order to sustain her claim ; (2) that as there was no evidence of an express contract by the uncle to pay anything in addition to $5.00 per week the claim should be disallowed.

*Practice—Auditor's findings of fact and law—Review.*

Where an auditor makes no distinct findings of fact or law, and his report is confirmed because the court is "unable to say the auditor has reached a wrong conclusion," such confirmation is not entitled to the same consideration by the Supreme Court as it would be if it rested on an approval of definite findings of fact and law made by the auditor.

Argued Feb. 9, 1897.   Appeal, No. 500, Jan. T., 1896, by Walter Lackey, from decree of O. C. Chester Co., dismissing exceptions to auditor's report.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ.   Reversed.

Exceptions to auditor's report.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was dismissing exceptions to auditor's report.

*William M. Hayes*, with him *C. Wesley Talbot*, for appellant. —A niece will not be allowed for services as nurse and housekeeper for her uncle, in the absence of evidence of a demand during the latter's lifetime, and evidence that the parties con-

templated payment at the time the services were rendered: Lafferty's Estate, 13 Pa. C. C. 82.

In the case of domestic servants, of which a nurse is one, the law presumes that the wages are paid, as is the custom: McConnell's Appeal, 97 Pa. 31; Houck v. Houck, 99 Pa. 554. Every claimant against that presumption must prove the nonpayment by convincing testimony: Peter's App., 106 Pa. 341; Gregory v. Com., 121 Pa. 611; Reed v. Reed, 46 Pa. 239.

Claims against a dead man's estate which might have been made against himself, while living, are always subjects of just suspicion: Carpenter v. Hays, 153 Pa. 433; Graham v. Graham, 34 Pa. 475; Miller's Est., 136 Pa. 239.

In the absence of a contract to pay an additional sum, the claimant is certainly concluded by the settlements she had with the decedent during his lifetime, and it is too late now, after he is in his grave, to trump up such an exorbitant claim and recover it from his estate: McHugh's Estate, 152 Pa. 442.

*William Butler, Jr.*, with him *Butler & Windle*, for appellee. —Nothing appeared which rebutted the presumption of a contractual relation between appellee and decedent respecting the services rendered: Walborn's App., 154 Pa. 230; Miller's App., 100 Pa. 568; Roberts v. Swift, 1 Yeates, 209; Thompson v. Stevens, 71 Pa. 161; Kauss v. Rohner, 172 Pa. 484.

No presumption of payment from lapse of time existed: Coulston's Est., 161 Pa. 151; McConnell's App., 97 Pa. 31; Lewis's Est., 156 Pa. 337. Even if a presumption of payment had existed the proofs rebutted any such inference.

No presumption could be drawn that the sum of $5.00 per week paid for board was intended to cover the personal services for which claim was made: Ranck v. Albright, 36 Pa. 367.

OPINION BY MR. JUSTICE WILLIAMS, July 15, 1897:

The decree appealed from was based upon the report of an auditor. This report was wanting in clearness. The learned auditor made no distinct findings of law or fact, as ought always to be done, and his conclusions must be gathered from a general examination of his report. It came before the orphans' court on exceptions and was confirmed, not in consequence of a definite approval of findings made by the auditor, but, in the lan-

guage of the orphans' court, because " we are unable to say the auditor has reached a wrong conclusion in the distribution of this estate." Such a decree of confirmation is not entitled to the same consideration as it would be if it rested on an approval of definite findings of fact and law made by the auditor. The general features of this case are however easily gathered. W. W. Lackey the decedent lost his wife many years ago. For several years before his death he seems to have had no home of his own, but to have resided with his unmarried sister Sarah, in a house owned by her. She died in 1890 ; but she provided for her brother by her will. She devised her house and lot to Miss Campbell, her niece, on condition that she should provide her brother William W. Lackey a home there so long as he lived. Miss Campbell had been a member of her aunt's family for several years. She knew the age, the infirmities, and the general condition of her uncle William, and she accepted the devise subject to its conditions, with full knowledge of what they might require. After her aunt's death she succeeded her as the head of the household, and maintained towards her uncle the same relation which her aunt Sarah had done while living. If there was any considerable change in his condition or in the care needed by him, after his sister's death, it does not appear from the evidence, and the duty of showing it and the particulars in which it consisted was on her. By her acceptance of the devise she had undertaken to furnish her uncle a home at the house, and such care as the home relation implies. This was the price to her at which the house was put; and her acceptance of it at the price shows that she considered it to be a reasonable one. But whether reasonable or not she elected to pay it when she accepted the house subject to it, and ought not to hesitate about discharging the obligation in good faith.

In December, 1890, Lackey went to Philadelphia for the treatment of some disease of one of his eyes. He spent several weeks in a hospital, during which his eye was removed and he was provided with a glass eye. When sufficiently recovered he returned to his home with Miss Campbell in the house which had belonged to his sister, where he remained for over two years and until his death in 1893. He was able, according to the evidence, to be about the town of West Chester, to visit his acquaintances at their places of business, and to a considerable extent to wait

upon himself until within a few days of death. He paid $5.00 per week for his board during all this time, and contributed towards the family laundry bills in proportion to his share of the work done. At the time of his death he was but a single week in arrears upon these bills. In the face of the provision in the will, and the circumstances now adverted to, a claim was presented against his estate, which is the subject of the present litigation.

The first suggestion made by the claimant of the existence of any claim on her part against her uncle, was in a postscript to a letter written by her to the executor in January, 1894. The claim then made was that the decedent had at one time given her a bond called the "Steelton Bond" for $600, which she had afterwards returned to him at his request relinquishing her control over it. She said she had to pay interest on about the same amount of money, and needed the interest upon the "Steelton Bond" with which to pay it, and would regard this arrangement as a satisfaction of all her claims against her uncle's estate. The amount of her demand seems to have been next stated before the auditor, where it had undergone a complete change in its character and amount. As presented before the auditor, it was a demand for $10.00 per week, in addition to what had been regularly paid to her by the decedent for the whole time he had been with her after his return from Philadelphia and down to the day of his death. This time she had computed as one hundred and twenty-nine weeks. The auditor found that this demand should be allowed because the claimant was a niece and not a daughter of the deceased. From this fact he argued that the family relation did not exist between them, and that she might safely contract with him for his care. He infers that a contract was made between them, because of what transpired in relation to the "Steelton Bond," about which there is no evidence whatever; and because, in the language of the auditor, "Nothing appeared which rebutted the presumption of a contractual relation between appellee and decedent respecting the services rendered." He did not find that the decedent needed any considerable additional attention after his return from Philadelphia, nor that he ever said one word indicating that he had agreed to pay or expected to pay, or had the remotest idea that his niece expected him to pay, any additional

sum of money for either board or care. The serious question in this case received very little attention before the auditor. When and how did the relation which the claimant assumed toward her old· uncle when she accepted her aunt's devise of the house to her, subject to the provision in favor of the decedent, terminate, and when and how did a new one begin?— The· family relation was clearly created by the aunt's will and the acceptance of the house under it. When did this family relation cease? The maintenance until the decedent's death was the condition on which the title to the house was vested in her. She was bound to provide a home for her uncle so long as he lived; not in the almshouse, nor in any other place than the house she took from her aunt upon this express condition. When did he cease to be at home in this house?

The claimant can only recover upon an express contract. When was such contract made? Then, but not till then, the position of the decedent ceased to be that of a member of the household, and became that of a mere lodger, paying for everything he received, and liable to have the services he received suspended entirely or raised in price at the mere will of the claimant. No facts have been found that support the decree rendered by the learned auditor. And as we cannot adopt his presumptions which rest on mere conjecture there is nothing left for us but to reverse the decree. It is accordingly reversed, and the record remitted for further proceedings.